1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   PHILIP F. ATKINS-PATTENSON, Cal. Bar. No. 94901
2  TED C. LINDQUIST III, Cal. Bar. No. 178523
   Four Embarcadero Center, 17th Floor
3  San Francisco, California 94111
   Telephone: (415) 434-9100
4  Facsimile: (415) 434-3947
   E-mail: patkinspattenson@sheppardmullin.com
5          tlindquist@sheppardmullin.com

6  Attorneys for Defendant
   DELTA AIR LINES, INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                (SAN FRANCISCO DIVISION)

11

12  SPENCER R. MCMULLEN, suing            Case No. CV 08-1523 (JSW)
    individually and on behalf of all others
13  similarly situated,                   CLASS ACTION

14              Plaintiff,                1)  DEFENDANT DELTA AIR
                                              LINES, INC.'S NOTICE OF
15         v.                                 MOTION AND MOTION TO
                                              DISMISS [FED. R. 12(b)(6)]; and
16  DELTA AIR LINES, INC., and
    defendant Does 1 through 100,         (2) MEMORANDUM OF POINTS
17  inclusive.                                AND AUTHORITIES IN
                                              SUPPORT THEREOF
18              Defendants.
                                          (Filed concurrently with Declaration of
19                                        J. Scott McClain; Declaration of Philip
                                          F. Atkins-Pattenson)
20
                                          Date:          September 5, 2008
21                                        Time:          9:00 A.M.
                                          Courtroom:     2 (17th Floor)
22

23                                        Complaint Filed: March 19, 2008
                                          Served:          June 16, 2008
24

25

26

27

28

W02-WEST:FAP\400921757.2

                                          DELTA AIRLINES, INC.'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 5, 2008, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of the above-entitled court located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, the Honorable Jeffrey S. White presiding, defendant Delta Air Lines, Inc. ("**Defendant**" or "**Delta**") will bring on for hearing a motion for an order pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) dismissing each of the claims for relief of plaintiff Spencer R. McMullen ("**Plaintiff**" or "**McMullen**") for failure to state a claim upon which relief can be granted.

This motion is made on the grounds that Plaintiff's claims for relief are preempted by the Airline Deregulation Act (currently codified at 49 U.S.C. 41713(b)), and even if they were not, Plaintiff has failed to allege adequate facts to state a claim upon which relief can be granted against Delta.

This motion is based upon this Notice of Motion, Memorandum of Points and Authorities, Declaration of J. Scott McClain, the Declaration of Philip F. Atkins-Pattenson, all other pleadings and papers on file or deemed to be on file, and any argument that may be presented to the Court in connection with this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Complaint and action should be dismissed with prejudice because the claims of plaintiff Spencer R. McMullen ("**Plaintiff**" or "**McMullen**") are preempted and barred by the Airline Deregulation Act ("**ADA**") (currently codified at 49 U.S.C. § 41713(b)), and otherwise fail to state a claim upon which relief can be granted.

Plaintiff alleges that he was improperly required to pay approximately $18.75 for a tax that the Mexican government requires international airlines to collect from certain airline passengers traveling into Mexico (the "**Mexican Non-Immigrant Tax**" or **"Tax"**). Despite being exempt from the Mexican Non-Immigrant Tax as a legal resident of Mexico, Plaintiff alleges he was required by defendant Delta Air Lines, Inc. ("**Delta**" or "**Defendant**") to pay the Tax in connection with his transportation on board Delta flights from Los Angeles to Guadalajara on February 15, 2007 and July 25, 2007. (COMPLAINT ¶¶ 46-50.) Based on *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992), *Sanchez v. Compania Mexicana de Aviacion S.A.*, Case No. CV 07-7196 R (RCx) (C.D. Cal. March 25, 2008) ("*Sanchez*"),[1] *Buck v. American Airlines, Inc.,* 476 F.3d 29 (1st Cir. 2007), and the other cases discussed below, it is clear that Plaintiff's claims are preempted and barred by the ADA. In addition, because Plaintiff has failed to identify a specific contractual promise allegedly breached by Delta and failed to pursue his contractual remedy for a refund of the Tax, his allegations fail to state a claim upon which relief can be granted.

---

[1]    True and correct copies of the First Amended Class Action Complaint and the Court's Findings of Fact and Conclusions of Law in *Sanchez* are attached as Exhibits 1 and 2, respectively, to the Declaration of Philip F. Atkins-Pattenson, filed and served herewith.

1

2                                        **II.**

3                    **STATEMENT OF ISSUES TO BE DECIDED**

4          Pursuant to Local Rule 7-4, Delta submits that the issues to be decided on this

5   motion are:

6          1.      Whether Delta's collection of the Mexican Non-Immigrant Tax as part

7   of the purchase price of Plaintiff's ticket is "related to the price, route or service of

8   an air carrier" so as to fall within the preemption of the ADA.

9          2.      Whether, even if not preempted under the ADA, Plaintiff's two claims

10  for relief (for breach of contract, and for breach of the implied covenant of good

11  faith and fair dealing) nevertheless should be dismissed for failure to state a claim

12  upon which relief can be granted.

13                                       **III.**

14                                      **FACTS**

15

16         The Complaint alleges that Plaintiff is a "legal resident of Mexico, and has

17  held a valid Mexican FM3 Visa since December 2005," and that, as the holder of the

18  FM3 Visa, he was exempt from a Mexican Non-Immigrant Tax which the Mexican

19  government imposes on "each passenger flying into Mexico from the United States .

20  . . ." (COMPLAINT ¶¶ 5, 16, 18-20.)  The Complaint asserts that despite Plaintiff's

21  exempt status, Delta charged him the Tax – in the approximate amount of $18.75

22  per ticket – for travel onboard Delta from Los Angeles to Mexico on February 15,

23  2007 and July 25, 2007, and that, "on information and belief," Delta did not remit

24  the collected Tax to the Mexican government. (*Id.* ¶¶ 25, 34, 48, 51.)

25         The Complaint contains two claims for relief.  In Count One (Breach of

26  Contract), Plaintiff asserts that Delta breached "[t]he terms of the parties' contract as

27  set forth in the [Delta] International Contract of Carriage" by (1) "collecting . . .

28  non-immigrant fees, which were not actually due to the Mexican government"

**DELTA AIRLINES, INC.'S MOTION TO DISMISS**

1  because of Plaintiff's exempt status as a legal resident of Mexico, and (2) "retaining

2  the non-immigrant fees collected from Plaintiff." (COMPLAINT ¶¶ 69-74.)[2]  In Count

3  Two (Breach Of The Implied Covenant Of Good Faith And Fair Dealing), Plaintiff

4  alleges that Delta breached the implied covenant by "failing to accurately determine

5  which taxes, fees and surcharges were actually due for each passenger, and by

6  charging exempt travelers a non-immigrant fee, which was not actually due, and by

7  retaining the non-immigrant fees collected from exempt travelers for itself." (*Id.* ¶

8  81.)

9      The Plaintiff seeks to represent a "class" consisting of the following persons:

10     All persons who were exempt from having to obtain an FMT (tourist)
       Visa or FMN (business) Visa to enter Mexico, and who purchased a
11     plane ticket from Defendant Delta Air Lines between 2004 and the
       present, to fly to Mexico direct from California or with a stop in
12     California, which included, in the purchase price of the ticket, a non-
       immigrant fee.

13  (*Id.* ¶ 56.)

14                                    **III.**

15                                 <u>**ARGUMENT**</u>

16  **A.    THE LEGAL STANDARD**

17     A complaint should be dismissed under Rule 12(b)(6) as a matter of law

18  where there is either a "lack of a cognizable legal theory" or "the absence of

19  sufficient facts alleged under a cognizable legal theory." (*Balistreri v. Pacifica*

20  *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).)  Although allegations of material

21  fact must be accepted as true, "the court is not required to accept legal conclusions

22  cast in the form of factual allegations if those conclusions cannot reasonably be

23

24  [2]  True and correct copies of the Delta Air Lines "International Contract of
       Carriage" referenced in Paragraph 69 of the Complaint that were in effect
25     when Plaintiff took the two trips in question are attached as Exhibits 1 and 2
       to the Declaration of J. Scott McClain, filed and served herewith.  Delta's
26     International Contract Of Carriege is a public tariff, filed with and approved
       by the Department of Transportation, and is incorporated by reference under
27     federal law into every Delta ticket contract. (*See generally* 14 C.F.R. Part
       221.)

28

drawn from the facts alleged." (*Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).)

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint"; however, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." (*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).) "The court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." (*Id.*) (citation and internal quotations omitted); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).)

## B.    <u>THE AIRLINE DEREGULATION ACT PREEMPTS PLAINTIFF'S CLAIMS</u>

Plaintiff's claims are preempted by the ADA, 49 U.S.C. § 41713(b), because they clearly "relate to" Delta's prices given that the Mexican Non-Immigrant Tax is collected as a necessary part of the purchase price of the passenger ticket and is related to and intertwined with the sale, price, and issuance of the passenger tickets. Plaintiff's claims also "relate to" Delta's routes and services because the Tax is collected only on routes between Mexico and other countries and it is part of the services provided by Delta to its customers to facilitate the flow of passengers through Mexican airports by eliminating the need for passengers to stand in line at Mexican airports to pay the Tax prior to entering the country

### 1.    The ADA Provides For Express Preemption That The Supreme Court Has Interpreted Broadly

Congress enacted the ADA in 1978 to deregulate the airline industry. (*See* 49 U.S.C. § 40101(a)(6), (a)(12)(A) (2007) (formerly codified at 49 U.S.C. § 1302(a)(4), (a)(9)); *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th

1   Cir. 1998).)  In enacting the ADA, Congress determined that "maximum reliance on

2   competitive market forces would best further efficiency, innovation, and low prices

3   as well as variety [and] quality . . . of air transportation services." (*Morales, supra,*

4   504 U.S. at 378 (citation and internal quotation marks omitted).)  Congress included

5   an express preemption provision in the ADA "[t]o ensure that the States would not

6   undo federal deregulation with regulation of their own." (*Id.*; *see also Taj Mahal*

7   *Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3rd Cir. 1998); *Charas,*

8   *supra,* 160 F.3d at 1265 ("The purpose of preemption is to avoid state interference

9   with federal deregulation").)

10      The ADA provides, in relevant part that "[e]xcept as provided in this

11  subsection, a State, political subdivision of a State, or political authority of at least 2

12  States **may not enact or enforce a law**, regulation, or other provision **having the**

13  **force and effect of law related to a price, route, or service of an air carrier**...."

14  (49 U.S.C. § 41713(b)(1) (emphasis added).)  The phrase "related to a price, route,

15  or service of an air carrier" is to be *broadly* construed.   In *Morales, supra*, the

16  Supreme Court examined whether the ADA preempted enforcement of state

17  guidelines concerning regulation of air fare advertising, focusing on the preemption

18  clause's "relating to"[3] language. (*Id.* at 383-86.)  Relying on its ERISA line of cases

19  and the ordinary meaning of the statutory language, the Court construed the phrase

20  "relating to" broadly so as to preempt "State enforcement actions having a

21  connection with, or reference to, airline 'rates, routes, or services'." (*Id.* at 384.)

22  The Court stated:

23          For purposes of the present case, the key phrase, obviously, is "relating
            to."  The ordinary meaning of these words is a broad one – "to stand in
24          some relation; to have bearing or concern; to pertain; refer; to bring
            into association with or connection with," Black's Law Dictionary
25          1158 (5th ed. 1979) – and the words thus express a broad pre-emptive

26  _____
    [3]     The prior version of what is now 49 U.S.C. § 41713(b)(1) – 49 U.S.C. § 1305(a)(1)
27  – preempted states from enacting or enforcing laws "**relating** to rates, routes, or
    services of any air carrier . . . ." (emphasis added).  Congress intended the revision
28  to make no substantive change. (Pub. L. 103-272, § 1(a), 108 Stat. 745.)

1
2
3
4
5
6
7

purpose.   We have repeatedly recognized that in addressing the similarly worded pre-emption provision of [ERISA], 29 U.S.C. § 1144(a), which pre-empts all state laws "insofar as they . . . relate to any employee benefit plan."   We have said, for example, that the "breadth of [that provision's] preemptive reach is apparent from [its] language," . . . that it has a "broad scope," . . . and an "expansive sweep," . . . and that it is "broadly worded," . . . "deliberately expansive," . . . and "conspicuous for its breadth." . . . Since the relevant language of the ADA is identical, we think it appropriate to adopt the same standard here:   **State enforcement actions having a connection with or reference to airline "rates, routes, or services" are pre-empted** under [the ADA].

8    (*Id.* at 383-84 (emphasis added).)

9    Based on this "broad preemptive purpose," the Court rejected contentions that

10   the ADA only preempted states from actually prescribing rates, routes, or services,

11   and that only state laws specifically aimed at the airline industry were preempted.

12   (*Id.* at 384-86.)   The Court held that the state law guidelines had the "forbidden

13   significant effect" on the airlines' rates, routes and services, primarily because they

14   restricted fare advertising, which "relates to" price.   (*Id.* at 388-89; *see also Hingson*

15   *v. Pacific Southwest Airlines*, 743 F.2d 1408, 1415 (9th Cir. 1984) ("[ADA]

16   preemption is not limited to those state laws or regulations that **conflict** with federal

17   law.   It preempts state laws and regulations '**relating to** rates, routes, or services.'")

18   (emphasis in original).)

19   Three years after *Morales*, the Supreme Court reaffirmed the breadth of its

20   interpretation of the ADA's preemption provision. (*American Airlines, Inc. v.* `, 513

21   U.S. 219 (1995).)   However, the Court carved out a narrow exception for "suits

22   alleging no violation of state-imposed obligations, but seeking recovery solely for

23   the airlines' alleged breach of its own, self-imposed undertakings."   (*Id.* at 228.)

24   Accordingly, the plaintiffs there could pursue their claim that American Airlines

25   breached the contractual terms of its frequent flyer customer loyalty program by

26   retroactively imposing black-out dates and other limitations on the use of miles

27   earned by passengers prior to the implementation of the restrictions.   As shown

28   below, Delta's collection of the Mexican Non-Immigrant Tax is not a "self-imposed

1  undertaking," and so the narrow exception to ADA preemption in *Wolens* does not

2  assist Plaintiff here.

3    **2.    Plaintiff's Claims Are Preempted By The ADA Because The
           Tax Is Part Of The Purchase Price Of A Delta Ticket And
4          Thus Relates To Delta's Prices, Routes and Service**

5

6    Plaintiff's claims challenging Delta's conduct in allegedly collecting but

7  failing to remit the Mexican Non-Immigrant Tax are clearly preempted by the ADA

8  because they have an undeniable "connection with" the "price, route or service of an

9  air carrier . . . ."  (49 U.S.C. § 41713(b)(1).)  Earlier this year, the U.S. District

10 Court for the Central District of California held that claims which were nearly

11 identical to those asserted by the Plaintiff here were preempted by the ADA.

12 (*Sanchez v. Compania Mexicana de Aviacion, supra.*)[4]

13    In *Sanchez*, the plaintiff (like McMullen here) alleged that she, and the class

14 of persons she sought to represent, were improperly charged "a certain Mexican

15 tourism tax imposed by the government of Mexico and collected by airlines on

16 behalf of the government of Mexico in connection with the sale of passenger tickets

17 for flights to Mexico."  (*Id.* at 2.)  The plaintiff there (like McMullen here) claimed

18 that "she was exempt under Mexican law from payment of the Mexican tourism tax"

19 and that Mexicana Airlines "breached [its] contracts of carriage by collecting the

20 tourism tax from her and other passengers who were purportedly exempt."  (*Id.* at

21 4.)

22    In granting summary judgment for the airline based on ADA preemption, the

23 Court emphasized that "all of the claims asserted" by the plaintiff "concerning the

24 Mexican tourism tax relate to Mexicana's prices, routes and services . . . ."  (*Id.* at 4-

25 5.)  The Court stated: "The claims . . . concerning the collection of the Mexican

26 tourism tax relate to Mexicana's prices because the Mexican tourism tax is collected

27 ────────────────────

[4]    Exhibit 2 to the Atkins-Patterson Declaration.

28

together with the purchase price of the passenger ticket and is related to and intertwined with the sale, price, and issuance of the passenger tickets." (*Id.* at 5.)

The Court further held that such claims "also relate to Mexicana's routes and services because the Mexican tourism tax is collected only on routes between Mexico and other countries and it is part of the services provided by Mexicana to its customers to facilitate the flow of passengers through Mexican airports by eliminating the need for passengers to stand in line at Mexican airports to pay the tourism tax prior to entering the country." (*Id.*) The Court also held:

> Claims seeking reimbursement of government fees and taxes, including charges on behalf of foreign sovereigns such as the Mexican government, which are collected by Mexicana with the purchase price of a passenger ticket are preempted by the Airline Deregulation Act, because they are related to the prices charged by airlines. Since the tourism tax which plaintiffs here seek to recover is collected by Mexicana as part of the price of the passenger ticket, the tourism tax is related to pricing, and all claims asserted by plaintiff . . . are preempted by the Airline Deregulation Act, as a matter of law.

(*Id.* at 6-7.)

Finally, the Court held:

> The preemptive coverage of the Airline Deregulation Act also applies to routes and services which are provided by the airline. *See* 49 U.S.C. § 41713. As the tourism tax is charged only on routes between Mexico and other countries and as the collection of the tourism tax at the time of ticketing is a service facilitating the flow of passengers through the airports in Mexico, . . . Sanchez's claims . . . are preempted by the Airline Deregulation Act on the grounds that the claims are related to Mexicana's routes and services.

(*Id.* at 7.)

As in *Sanchez,* McMullen is attempting to impose obligations on Delta which clearly "relate to" and thereby affect Delta's prices, routes and services. Accordingly, the claims are preempted by the ADA. (*Sanchez,* at 5-8.)

Several other cases also demonstrate why Plaintiff's claims here are preempted by the ADA. In *Buck v. American Airlines, supra,* 476 F.3d 29, purchasers of nonrefundable airline tickets that were never used sued American Airlines and other carriers to recover various fees and taxes that had been collected

1  as part of the original ticket prices.  The fees that allegedly were wrongfully

2  withheld from the nonrefundable tickets included passenger facility charges,

3  customs fees, immigration fees, agricultural quarantine fees, security fees, and

4  charges on behalf of foreign governments.  In addition to claiming that the airline's

5  actions violated federal regulations, the plaintiffs asserted claims for breach of

6  contract, rescission, unjust enrichment, breach of the implied covenant of good faith

7  and fair dealing, breach of fiduciary duty, and civil conspiracy.  (*Id.* at 32.)

8      The First Circuit held that the ADA preempted all the plaintiffs' claims

9  against the airlines, holding that the plaintiffs were "attempting to invoke state

10  remedies to further a state policy: that those who are wronged should have

11  individualized access to the courts in order to remediate that wrong. . . .  It is the

12  imposition of this state policy that would constitute forbidden state enforcement, in

13  violation of the ADA's preemption provision, because the ADA itself provides no

14  private right of action." (*Id.* at 35.)

15      The plaintiffs in *Buck* argued that their suit did not affect prices (or rates),

16  routes or services of airlines because the lawsuit was filed after the prices (or rates),

17  routes, and services had been determined for the flights in question.  (*Id.*)  In their

18  view, airline ticket prices (or rates) were composed of two separate components:  (1)

19  the *fare prices* (or rates) set by the airlines, which comprise the base cost of a ticket,

20  and (2) the *taxes, fees, and charges* imposed by the Government or other fee-levying

21  authorities.  In rejecting this argument, the First Circuit stated:

22      This dichotomy blurs when contextualized within the contours of the
        "significant effect" doctrine.  Although the fees are in one sense
23      separate from the base fare, the two are inextricably intertwined.  In
        all events, an air traveler's concern is with the overall cost of his or
24      her ticket.  Thus, when an airline establishes the base fare, it must take
        cognizance of any surcharges that will be imposed by operation of
25      law.  It is freshman-year economics that higher prices mean lower
        demand, and that customers are sensitive to the full price that they
26      must pay, not just the portion of the price that will stay in the seller's
        coffers.  For that reason, an airline must account for the fees when
27      setting its own rates.  It follows that a finding for the plaintiffs in this
        case would impact base fares – and since past judgments affect future

28

behavior, this is as true of the retroactive relief requested by the plaintiffs as it is of the prospective relief that they request.

(*Id.* at 35-36; *see also Statland v. American Airlines, Inc.,* 998 F.2d 539, 541-42 (7th Cir. 1993) (passenger's claim against American for allegedly withholding the 10% federal excise tax on cancelled airline tickets likewise preempted by the ADA); *Lehman v. USAir Group, Inc.* 930 F. Supp. 912, 915 (S.D.N.Y. 1996) (ADA preempted passenger claims that airlines improperly subjected them to federal excise tax after tax had expired).)

### 3.    The Narrow *Wolens* Exception For Contract Claims Does Not Apply Here

Although Plaintiff casts his first claim as one for "breach of contract," the Complaint fails to allege that Delta breached any of "its own, self-imposed undertakings" in allegedly collecting the Mexican Non-Immigrant Tax from Plaintiff, and failing to remit it to the Mexican government, so as to come within the narrow exception to preemption under the ADA for contract claims. (*Wolens*, 513 U.S. at 228.)  Notably, the Complaint fails to cite to any specific language in the Delta International Contract of Carriage or any other agreement with which Delta purportedly failed to comply.[5]

Plaintiff alleges in wholly conclusory fashion that "[t]he contract between the passenger and the Defendant . . . contains a promise to collect only taxes and fees actually due from each passenger and remit to the appropriate government authority all taxes and fees as due," and that when he traveled onboard Delta, "[t]he Taxes and Fees portion of these tickets was represented to include all and only applicable

---

[5]    True and correct copies of Delta's International Contract of Carriage in effect on the dates of travel alleged in the Complaint are attached as Exhibits and 1 and 2 to the McClain Declaration.  As stated in Rule 1 thereof, the International Contract of Carriage is the contract between Delta and the passenger, consisting of (i) the ticket; (ii) the Conditions of Carriage; and (iii) Delta's published fare rules and regulations.

1  taxes and fees." (Complaint ¶ 50.) However, the Complaint does not cite to any
2  contractual provision for these bald and unsubstantiated assertions.

3      The First Circuit in *Buck* held that the *Wolens* exception did not apply
4  because "the plaintiff's amended complaint identifie[d] only a single word –
5  'nonrefundable' – as common to their contracts of carriage with a multitude of
6  airlines," and it seemed "fanciful to suggest, in the circumstances of [the] case, that
7  the word 'nonrefundable' alone [could] anchor a breach of contract claim." (*Buck*,
8  *supra*, 476 F.3d at 36) Here, the Complaint fails to identify even a single word in
9  Plaintiff's contract with Delta on which Plaintiff's claim for breach of contract is
10  based.

11      In *Waul v. American Airlines, Inc.*, 2003 W.L. 22719273 (Cal. App. 1 Dist.
12  Nov. 17, 2003)[6] the plaintiffs alleged that American Airlines breached a contractual
13  obligation by failing to award frequent flyer miles to customers who purchased but
14  did not use nonrefundable airline tickets. In affirming dismissal of the complaint,
15  the Court of Appeal pointed out that "Plaintiff's complaint does not allege the
16  breach of an express term found in the frequent flyer membership agreement or in
17  the terms of the ticket itself." (*Id*. at *3.) Although the complaint alleged that
18  consumers "reasonably believed and expected that they would receive the frequent
19  flyer miles when they purchased said non-refundable airline tickets," there was "no
20  allegation that the agreement addresses whether a customer's mileage account will
21  be credited if the customer is unable to complete the purchased itinerary, nor [did]
22  the complaint allege any specific contract terms that that might be so interpreted."
23  (*Id*.) The court stated: "Plaintiff has alleged no facts suggesting that the basis for
24  the obligation he seeks to enforce is to be found within the terms of the contract. An
25  action to enforce such a claim is preempted by the ADA." (*Id*. at *4.)

26
27
28

---
[6]      A copy of this decision is attached as Exhibit 3 to the Atkins-Patterson Declaration.

1       Similarly here, McMullen has alleged no facts from which the Court could
2   find that the obligations he seeks to impose upon Delta have any basis within the
3   terms of his contract with Delta.  To the contrary, Delta's International Contract Of
4   Carriage expressly precludes any such conclusion.  This is because the contract
5   expressly recognizes the possibility that Delta or its agents may inadvertently collect
6   international ticket taxes from passengers who were actually entitled to a special
7   exemption from the Tax, such as the special exemption that McMullen alleges he
8   qualified for in this case.  In such event, the terms of McMullen's contract establish
9   a specific procedure by which he may obtain a refund of the taxes collected in error.
10  McMullen does not allege that he complied with this refund procedure or that he
11  ever even requested a refund at all.  Accordingly, as set forth in more detail in the
12  following section, McMullen cannot state a claim for breach of contract.

13      Finally, Plaintiff's claim in Count Two for breach of the implied covenant of
14  good faith and fair dealing is also preempted by the ADA.  In *Waul*, the court held
15  that the plaintiff who complained of American Airlines' failure to provide frequent
16  flyer credit for unused nonrefundable tickets did "not succeed in transforming his
17  claim into one based on the agreement of the parties by alleging that the refusal to
18  extend frequent flyer credit . . . breaches the covenant of good faith and fair dealing
19  in the contract." (*Waul*, *supra*, at * 4.)  The court stated:

> The obligation to extend frequent flyer credit under these
> circumstances is no more a self-assumed obligation because it
> breaches this implied covenant than it would be if the obligation were
> implied directly into the contract as a matter of law.  However the
> breach may be characterized, the source of the asserted obligation is
> not a commitment that AA has made to its frequent flyer customers
> but plaintiffs' conception of what fairness requires and what the law
> should insist upon.  Thus, this claim is also preempted.

26  (*Id.*; *see also Howell v. Alaska Airlines, Inc.,* 99 Wn. App. 646, 994 P.2d 901
27  (Wash. Ct. App. 2000) (claim for breach of implied covenant of good faith and fair
28  dealing relating to inability to use nonrefundable tickets was preempted by the

ADA); *Blackner v. Cont'l Airlines, Inc.*, 311 N.J. Super. 10, 709 A.2d 258 (N.J. Super. Ct. App. Div. 1998) (claim for breach of covenant of good faith and fair dealing is preempted by ADA).

## C.   THE PLAINTIFF'S CLAIMS OTHERWISE FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

If for any reason the Court determines that the Plaintiff's claims for relief are not preempted in their entirety under the Airline Deregulation Act, the Court should dismiss Counts One and Two for failure to state a claim upon which relief can be granted.

To establish a claim for breach of contract under California law, Plaintiff must allege and prove each of the following elements: (1) that a contract existed; (2) that he performed, or that his nonperformance was excused; (3) that all conditions precedent to Delta's performance occurred; (4) that Delta breached the contract; and (5) that Plaintiff's damages were proximately caused by Delta's breach.  (*See Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887 (1971).)

As set forth above, absent from the Complaint is any *factual* allegation that Delta breached any specific contractual language in allegedly imposing the Mexican Non-Immigrant Tax on Plaintiff, and failing to remit it to the Mexican government. But even assuming, *arguendo*, that such a contractual undertaking existed, Plaintiff has waived his right to enforce it by failing to follow the specific procedures set forth in the Delta International Contract of Carriage pursuant to which Plaintiff *could* have availed himself of the specific relief he now seeks.[7]  Specifically, Plaintiff could have, within one year of the date of travel, furnished Delta proof of

---

[7]  *See* Exhibits 1 and 2 to the McClain Declaration (true and correct copies of Delta's International Contract of Carriage, in effect when Plaintiff traveled to Mexico on February 15, 2007 and July 25, 2007).  The terms of the relevant Rules (90 and 65) are the same in both versions.

his exempt status and requested a full refund of the Mexican Non-Immigrant Taxes that he paid. Rule 90(C) of the International Contract of Carriage provides:

> **Voluntary Refunds**, which include any refund made at the request of the passenger for any reason other than those specified in the preceding section, **will be processed subject to the provisions of this section**.[8]

Subsection (C)(2)(b) of Rule 90 goes on to state:

> Delta will refund taxes, fees or charges collected upon nonrefundable tickets for international transportation **only where** required by law or **where such taxes were collected in error and the passenger submits evidence of exemption from the tax, fee or charge to Delta in connection with a timely refund request. No request for a refund of taxes, fees, or charges will be processed unless a request for the refund is received by Delta on the written or electronic forms provided by Delta within the time limits specified by this rule**.[9]

In addition, Rule 90(A)(3) provides that "No refunds will be issued on any ticket unless Delta receives a request for the refund and any unused coupons are surrendered to Delta prior to the expiration date of the ticket as defined in Rule 65."[10] Rule 65, in turn, states that "Tickets expire at midnight on the date of expiration of ticket validity."[11]

There is no allegation in the Complaint that Plaintiff attempted to avail himself of these refund procedures within the one-year time period since taking the flights at issue (on February 15 and July 25, 2007) but was unsuccessful in pursuing them. Because Plaintiff failed to follow the procedures in his contract with Delta for seeking a refund of the Mexican Non-Immigrant Tax, his claim for breach of contract fails as a matter of law. (*See, e.g., Talei v. Pan American World Airways*,

---

[8]    McClain Declaration, Exhibits 1 and 2, at p. 59 (emphasis added).

[9]    McClain Declaration, Exhibits 1 and 2, at p. 60 (emphasis added).

[10]    McClain Declaration, Exhibits 1 and 2, at p. 57.

[11]    McClain Declaration, Exhibits 1 and 2, Rule 65(B)(2), (5).

1  132 Cal.App.3d 904 (1982) (claim for loss of rugs barred by failure to timely

2  present claim in accordance with time limits in tariff); *Moody v. Federal Express*

3  *Corp.,* 368 Ill. App. 3d 838, 865, 858 N.E.2d 918, 923 (2006) ("If Moody were

4  allowed to pursue her retroactive partial refund four years after the delivery, the

5  contractual provisions expressing and relating to FedEx's limit of liability . . . would

6  be rendered meaningless."); *State Farm Fire and Cas. Co. v. United Van Lines, Inc.,*

7  825 F. Supp. 896 (N.D. Cal. 1993) (Shippers bound by 9-month limitations period

8  for filing claim established by carrier's tariff and incorporated in bill of lading, even

9  though shippers did not sign bill of lading).)

10        Plaintiff's failure to exhaust his remedies under Delta's International Contract

11  of Carriage is also fatal to his claim for breach of the implied covenant.  (*See Rios v.*

12  *Scottsdale Ins. Co.*, 119 Cal.App.4th 1020, 1028 (2004) (no violation of the convent

13  of good faith and fair dealing where the plaintiff based her claim on her insurer's

14  improper investigation of her claim for theft loss but the insurance policy at issue

15  provided no coverage for such losses).)

16                                 **IV.**

17                **CONCLUSION AND REQUESTED RELIEF**

18        For all of the reasons set forth above, Delta Air Lines respectfully requests

19  that this Court dismiss Plaintiff's Complaint and action with prejudice.

20

21  Dated:  July 7, 2008

22                          Respectfully submitted,

23                          SHEPPARD MULLIN RICHTER & HAMPTON LLP

24

25                          By      */s/ Philip F. Atkins-Pattenson*
                                      PHILIP F. ATKINS-PATTENSON

26                              Attorneys for Defendant
27                              DELTA AIR LINES, INC.

28

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION .................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................1

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..................................1

II. STATEMENT OF ISSUES TO BE DECIDED.................................................2

III. FACTS .............................................................................................................2

III. ARGUMENT ....................................................................................................3

    A.      THE LEGAL STANDARD ..........................................................3

    B.      THE AIRLINE DEREGULATION ACT PREEMPTS PLAINTIFF'S CLAIMS...........................................................................4

          1.     The ADA Provides For Express Preemption That The Supreme Court Has Interpreted Broadly ...............................4

          2.     Plaintiff's Claims Are Preempted By The ADA Because The Tax Is Part Of The Purchase Price Of A Delta Ticket And Thus Relates To Delta's Prices, Routes and Service ...........................7

          3.     The Narrow *Wolens* Exception For Contract Claims Does Not Apply Here ...............................................................10

    C.      THE PLAINTIFF'S CLAIMS OTHERWISE FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ..............................13

IV. CONCLUSION AND REQUESTED RELIEF ...............................................15

## __TABLE OF AUTHORITIES__

### __Cases__

**Federal Cases**

*American Airlines, Inc. v. Wolens,*
  513 U.S. 219 (1995)..................................................................................7, 8

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696, 699 (9th Cir. 1988) ..............................................................4

*Buck v. American Airlines, Inc.,*
  476 F.3d 29 (1st Cir. 2007)...............................................1, 2, 3, 9, 10, 11

*Charas v. Trans World Airlines, Inc.,*
  160 F.3d 1259, 1265 (9th Cir. 1998) .......................................................5, 6

*Clegg v. Cult Awareness Network,*
  18 F.3d 752, 754-55 (9th Cir. 1994) ...........................................................4

*Hingson v. Pacific Southwest Airlines,*
  743 F.2d 1408, 1415 (9th Cir. 1984) ...........................................................7

*Lehman v. USAir Group, Inc.,*
  930 F. Supp. 912, 915 (S.D.N.Y. 1996) .....................................................12

*Marder v. Lopez,*
  450 F.3d 445, 448 (9th Cir. 2006) ...............................................................4

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374, 378 (1992).....................................................................1, 5, 6, 7

*Sprewell v. Golden State Warriors,*
  266 F.3d 979, 988 (9th Cir. 2001) ...............................................................4

*State Farm Fire and Cas. Co. v. United Van Lines, Inc.,*
  825 F. Supp. 896 (N.D. Cal. 1993)............................................................17

*Statland v. American Airlines, Inc.,*
  998 F.2d 539, 541-42 (7th Cir. 1993) ........................................................11

*Swartz v. KPMG LLP,*
  476 F.3d 756, 763 (9th Cir. 2007) ...............................................................4

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.,*
  164 F.3d 186, 194 (3rd Cir. 1998)...............................................................6

**State Cases**

*Acoustics, Inc. v. Trepte Constr. Co.,*
  14 Cal.App.3d 887 (1971) .........................................................................15

*Blackner v. Cont'l Airlines,* Inc.,
  311 N.J. Super. 10, 709 A.2d 258 (N.J. Super. Ct. App. Div. 1998) ............15

*Howell v. Alaska Airlines, Inc.*,
   99 Wn. App. 646, 994 P.2d 901 (Wash. Ct. App. 2000) ..................................15

*Moody v. Federal Express Corp.*,
   368 Ill. App. 3d 838, 865, 858 N.E.2d 918, 923 (2006) ..................................17

*Rios v. Scottsdale Ins. Co.*,
   119 Cal.App.4th 1020, 1028 (2004) ...............................................................18

*Talei v. Pan American World Airways*,
   132 Cal.App.3d 904 (1982) .............................................................................17

*Waul v. American Airlines, Inc.*,
   2003 W.L. 22719273 (Cal. App. 1 Dist. Nov. 17, 2003) ....................13, 14, 15

**Other Cases**

*Sanchez v. Compania Mexicana de Aviacion S.A.*,
   Case No. CV 07-7196 R (RCx) (C.D. Cal. March 25, 2008)...........1, 8, 9, 10

**Statutes**

Fed. R. Civ. Pro., Rule 12(b)(6) ..............................................................................4,6

29 U.S.C. § 1144(a) .....................................................................................................6

49 U.S.C. § 1302(a)(4) .................................................................................................4

49 U.S.C. § 1305(a)(1) .................................................................................................5

49 U.S.C. § 40101(a)(6) ...............................................................................................4

49 U.S.C. § 41713 ........................................................................................................8

49 U.S.C. § 41713(b) .......................................................................................1, 4, 5, 7

**Regulations**

14 C.F.R. Part 221 ........................................................................................................3

**Miscellaneous**

*Black's Law Dictionary* 1158 (5th ed. 1979) ............................................................5