1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   PHILIP F. ATKINS-PATTENSON, Cal. Bar. No. 94901
2  TED C. LINDQUIST, III, Cal. Bar No. 178523
   Four Embarcadero Center, Seventeenth Floor
3  San Francisco, California 94111
   Telephone:  (415) 434-9100
4  Facsimile:  (415) 434-3947
   E-mail:     patkinspattenson@sheppardmullin.com
5              tlindquist@sheppardmullin.com

6  Attorneys for Defendant
   DELTA AIR LINES, INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  (SAN FRANCISCO DIVISION)

11

12 | SPENCER R. MCMULLEN, suing individually and on behalf of all others similarly situated, | Case No. CV 08-1523 (JSW)
13 | | **CLASS ACTION**
14 | Plaintiff, | **DEFENDANT DELTA AIR LINES, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS [FED. R. 12(b)(6)]**
15 | v. |
16 | DELTA AIR LINES, INC., and defendant Does 1 through 100, inclusive. | Date:       September 26, 2008
17 | | Time:       9:00 A.M.
   | | Courtroom:  2 (17th Floor)
18 | Defendants. |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.  ARGUMENT ............................................................................................................. 3

   A. THE NARROW WOLENS EXCEPTION FOR CLAIMS BASED ON SELF-IMPOSED UNDERTAKINGS BY AIR CARRIERS DOES NOT APPLY HERE. ............................................................................ 3

   B. PLAINTIFF'S CHALLENGE TO THE COLLECTION OF THE MEXICAN NON-IMMIGRANT TAX IS "RELATED TO" DELTA'S PRICES, ROUTES AND SERVICE. ............................................. 8

   C. PLAINTIFF WAIVED HIS RIGHT TO SEEK A REFUND OF THE NON-IMMIGRANT TAX BY NOT PURSUING THE REFUND WITHIN THE ONE-YEAR CONTRACTUAL PERIOD. ........................... 13

III. CONCLUSION AND REQUESTED RELIEF ........................................................ 14

1

## TABLE OF AUTHORITIES

2

Page(s)

3  Federal Cases

4  *Air Transport Ass'n of America v. Cuomo*,
       520 F.3d 218 (2d Cir. 2008)...............................................................................12

5  *All World Professional Travel Services, Inc. v. American Airlines*,
6      282 F. Supp. 2d 1161 (C.D. Cal. 2003) ..............................................................11

7  *American Airlines, Inc. v. Wolens*,
       513 U.S. 219 (1995)................................................................................1, 3, 5
8

   *Aloha Airlines v. Mesa Air Group*,
9      2007 U.S. Dist. LEXIS 19484 (D. Hawaii March 19, 2007)................................11

10 *Buck v. American Airlines, Inc.*,
       476 F.3d 29 (1st Cir. 2007) ........................................................................9, 10, 12
11

   *Charas v. Trans World Airlines*,
12     160 F.3d 1259 (9th Cir. 1998)............................................................................12

13 *Continental Airlines, Inc. v. Weiner*,
       1999 U.S. Dist. LEXIS 16377, at *16-17 (C.D. Cal. March 29, 1999) ...............11
14

   *In re Air Transportation Excise Tax Litigation*,
15     37 F. Supp. 2d 1133 (D. Minn. 1999.) ............................................................7, 12

16 *In re American Airlines, Inc. Privacy Litigation*,
       370 F. Supp. 2d 552 (N.D. Tex. 2005)..................................................................6
17

   *Lehman v. USAir Group, Inc.*,
18     930 F. Supp. 912 (S.D.N.Y. 1996)......................................................................10

19 *Morales v. Trans World Airlines, Inc.*,
       504 U.S. 374 (1992)...............................................................................................8
20

   *Rowe v. N.H. Motor Transp. Ass'n.*
21     522 U.S. __, 128 S. Ct. 989 (2008) ...................................................................8, 9

22 *Sanchez v. Compania Mexicana de Aviacion S.A.*,
       Case No. CV 07-7196 (RCx) (C.D. Cal. March 23, 2008)....................................9
23

   *Smith v. Comair, Inc.*,
24     134 F.3d 254 (4th Cir. 1998)..................................................................................5

25 *Statland v. American Airlines, Inc.*,
       998 F.2d 539 (7th Cir. 1993)................................................................................10
26

   *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*,
27     164 F.3d 186 (3d Cir. 1998)................................................................................11

28

*West v. Northwest Airlines, Inc.*,
   955 F.2d 148 (9th Cir. 1993)..................................................................................12

State Cases

*Delta Air Lines, Inc. v. Black*,
   116 S.W.3d 745 (Tex. 2003).................................................................................7, 8

*Godner-Abravenel v. American Airlines*,
   1997 U.S. Dist. LEXIS 19833 (N.D. Cal. October 27, 1997)...................................12

Federal Statutes

14 Code of Federal Regulations
   § 250.9(b) ..............................................................................................................12

49 United States Code
   § 14501(c)(1)...........................................................................................................9
   § 41713(b) ..............................................................................................................1

# I.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In denying that his claims relating to the Mexican Non-Immigrant Tax ("Tax") are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b) ("**ADA**"), plaintiff Spencer McMullen ("Plaintiff" or "McMullen") contends that he merely seeks "to enforce a self-imposed undertaking" by Delta. (Plaintiff's Opposition to Defendant's Motion to Dismiss at 2.) However, this argument is unavailing because the alleged "promise" which Plaintiff seeks to enforce – a commitment not to charge exempt passengers the Mexican Non-Immigrant Tax – appears nowhere in Delta's International Contract of Carriage.[1] Plaintiff nevertheless maintains that Delta *implicitly* undertook this commitment by "explicitly incorporat[ing]" into its International Contract of Carriage a Mexican statute which, Plaintiff asserts, prohibits Delta from imposing the Tax on exempt passengers. (Pl. Br. at 8.)

This argument cannot succeed because the contractual language on which Plaintiff hinges his entire argument – found in Rule 1(C)(4) in Delta's International Contract of Carriage – merely states that the provisions in the International Contract of Carriage shall not apply "to the extent they are contrary to applicable laws, governmental regulations, or orders . . . ." This language has no application here because it applies only in those situations in which a specific provision in the International Contract of Carriage is in *direct conflict with* "applicable laws, government regulations, or orders." Significantly, Plaintiff has not identified any specific section in Delta's International Contract of Carriage which *conflicts with* any provision in Mexican law. Moreover, it is manifestly unreasonable – and contrary to the directive in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995) (which prohibits breach of contract claims based on laws "external to the agreement") – for Plaintiff to construe Rule 1(C)(4) to imbue every Delta passenger with a

---

[1] *See* Exhibits 1 and 2 to the Declaration of J. Scott McClain In Support Of Defendant Delta Air Lines, Inc.'s Motion To Dismiss. (Dkt. # 9.)

1 private right of action based on his or her contention that Delta failed to comply with any
2 governmental law, regulation or order in existence anywhere the world.
3     In addition, there is no basis for Plaintiff's contention that the ADA does not
4 preempt his claim because his challenge to Delta's collection of the Tax "is only tenuously
5 related to an airlines [sic] prices, routes or services." (Pl. Br. at 2.) As set forth in Delta's
6 opening brief, collection of the Mexican Non-Immigrant Tax clearly is "*related to*" Delta's
7 prices because the Tax is collected as part of the purchase price of the passenger ticket and
8 is "*related to*" and intertwined with the sale, price and issuance of the passenger tickets.
9 (Opening Br. at 4, 7-8.) Moreover, collection of the Tax is "*related to*" Delta's routes and
10 services because the Tax is collected only on routes between Mexico and other countries,
11 and is part of the services provided by Delta to its customers to facilitate the flow of
12 passengers through Mexican airports by eliminating the need for passengers to stand in
13 line at Mexican airports to pay the Tax prior to entering the country. (*Id.* at 4, 8.)
14     Finally, Plaintiff fails to rebut Delta's argument that Plaintiff waived his right to
15 seek a refund of the Tax by failing to request the refund within one year from his dates of
16 travel. Plaintiff relies upon the general language in Rule 90(A) of Delta's International
17 Contract of Carriage, which states that Delta will issue refunds on unused or partially used
18 tickets subject to this rule (Pl. Br. at 2-3, 16-17). However, there is no provision
19 anywhere in Rule 90 (or elsewhere in Delta's International Contract of Carriage) which
20 states that Delta will *not* issue a refund on a ticket that has been fully used, if a refund is
21 due on the ticket for some reason. Moreover, the specific language in Delta's International
22 Contract of Carriage that is relevant to the issue in this case– Rule 90(C)(2)(b) – expressly
23 states that Delta *will* refund taxes collected on nonrefundable tickets from passengers who
24 claim to be exempt from those taxes. Rule 90(C)(2)(b) clearly imposes upon Delta the
25 duty to refund those taxes to the passenger (whether or not the ticket is used), subject only
26 to the requirement that the passenger must submit a timely request for this refund, and
27 must submit proof of his exempt status.
28

In sum, Plaintiff has failed to state a claim upon which relief can be granted, and Delta respectfully requests that Plaintiff's Complaint and this action be dismissed with prejudice.

## II.

## ARGUMENT

### A. THE NARROW *WOLENS* EXCEPTION FOR CLAIMS BASED ON SELF-IMPOSED UNDERTAKINGS BY AIR CARRIERS DOES NOT APPLY HERE

Plaintiff tries to avoid dismissal of his claim for breach of contract by pointing to the narrow exception to ADA preemption recognized in *American Airlines, Inc. v. Wolens*, 513 U.S. at 228, for breach of the airline's "self-imposed undertakings." (Pl. Br. at 5.) However, this argument must be rejected because neither Plaintiff's COMPLAINT, nor his opposition brief, identifies a specific "self-imposed undertaking" by Delta that allegedly has been breached.

The COMPLAINT alleges only that Delta's International Contract of Carriage "contains a promise to collect only taxes and fees actually due from each passenger and remit to the appropriate government authority all taxes and fees as due," but fails to allege where such "promise" can be found. (COMPLAINT ¶ 3.) Plaintiff's brief likewise fails to identify any actual provision in the International Contract of Carriage which contains the alleged "promise." Instead, Plaintiff bases his entire breach of contract claim on a tortured construction of Rule 1(C)(4) of the International Contract of Carriage. That Rule states: "These Conditions of Carriage are *applicable except to the extent that they are contrary to applicable laws, government regulations, or orders,* in which event the contrary law, regulation or order shall prevail." (Emphasis added.) Plaintiff contends that because of this language, Delta purportedly "imposed upon itself the obligation to obey all applicable laws and regulations, including the Mexican General Law of Population" (*id.*), and that

-3-

1  such language affords Plaintiff a private right of action for breach of contract against Delta
2  if the airline essentially violates any law in the world, including the Mexican statute.[2]
3        This argument cannot succeed because the language in Rule 1(C)(4) does not
4  support Plaintiff's tortured construction. By its plain language, that clause only applies if
5  there is an actual *conflict* between an express provision in the International Contract of
6  Carriage and some other "applicable" law, regulation or order. This is fatal to Plaintiff's
7  argument because no such actual conflict exists. To begin with, Plaintiff has failed to
8  identify any language in Delta's International Contract of Carriage which either prohibits
9  Delta from collecting the Tax from exempt-passengers, or requires Delta to do so. Indeed,
10 the International Contract of Carriage does not refer to the Tax at all.
11       Secondly, Plaintiff does not cite to any language within the "Mexican General Law
12 of Population" which *prohibits* Delta from collecting the fee from exempt passengers.
13 Plaintiff alleges only that the Mexican government imposes the fee on passengers, rather
14 than the airlines, but that Delta "has undertaken to collect these non-immigrant fees from
15 its passengers, and remit them to the government of Mexico on behalf of its passengers."
16 (COMPLAINT ¶¶ 5-6.) The fact that the airline provides to its passengers the service of
17 collecting the Tax in connection with the purchase of the fare (rather than requiring
18 passengers to pay the Tax at the Mexican airport upon arrival) does not mean that the
19 airline is obligated to collect the fee, much less that it violates a specific provision in a
20 Mexican statute by collecting the fee from an otherwise exempt passenger.
21       Plaintiff is essentially arguing that Rule 1(C)(4) broadly imposes a contractual
22 obligation on Delta to comply with *every* potentially-applicable international, national,
23 state, and/or local government law and regulation throughout the world, and has created a
24 cause of action for breach of contract in favor of all passengers every time that any such
25 law or regulation is allegedly violated. Not only is such a construction of Rule 1(C)(4)

---

[2] Plaintiff also relies on similar language in Rule 55(E), but that language appears in a section of the International Contract of Carriage which deals with air carrier liability and is not applicable here.

totally at odds with the plain language of the Rule, but it also flies in the face of the Supreme Court's clear directive that the very narrow exception to ADA preemption in *Wolens, supra*, for breach of contract claims not be used to pursue claims based on laws that are "external to the agreement":

> The ADA's preemption clause . . ., read together with the [Federal Aviation Act's] savings clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, *with no enlargement or enhancement based on state laws or policies external to the agreement.*

(*Wolens,* 513 U.S. at 232-33) (Emphasis added) (*see also Smith v. Comair, Inc.,* 134 F.3d 254, 258 (4th Cir. 1998) (plaintiff's "contract claim can only be adjudicated by reference to law and policies external to the parties' bargain and, therefore, is preempted under the ADA").)

Plaintiff's argument that the Delta International Contract of Carriage was breached because Delta erroneously collected a Mexican Non-Immigrant Tax from a passenger who in fact qualified for an exemption under the Mexican statute establishing the Tax is the epitome of a claim for breach of contract based on a law that is "external to the agreement." This is particularly so, given the fact that Rule 90(c)(2)(b) *expressly* contemplates that errors in international ticket tax collection might occur and establishes a specific process by which affected passengers may request and receive a refund of the tax in question.

Plaintiff also asserts that "[t]he cases on ADA preemption of claims for breach of contracts between airlines and their customers have held that when an airline's contract incorporates a law, the provisions of that law become part of the contract, and enforcement of those provisions does not expand the contractual obligations of the airline or result in preemption of the breach of contract claim." (Pl. Br. at 8-9.) However, this assertion overlooks the fact that *the Delta International Contract of Carriage did not incorporate the Mexican statute on which Plaintiff relies*, and the Mexican statute itself does not

1  *prohibit* airlines from collecting the Tax from anyone – it simply provides that certain
2  persons are exempt from the Tax. In any event, none of the cases cited by Plaintiff
3  involved facts similar to the situation presented here.
4       In *In re American Airlines, Inc. Privacy Litigation*, 370 F. Supp. 2d 552, 566
5  (N.D. Tex. 2005), the plaintiffs contended that they were injured by American's disclosure
6  of confidential passenger information to the Transportation Security Administration
7  without their consent. The court held that plaintiff's claim for breach of contract was not
8  preempted because it rested "on a self-imposed undertaking concerning the handling of
9  passengers' confidential information…." (*Id.* at 565.) Specifically, "American's website
10 set[] out its privacy policy, which [was] part of the contract of carriage with passengers."
11 (*Id.* at 556.)

> The Policy state[d] the limitations American observe[d] in disclosing or sharing customer information and represents that information security is one of its highest priorities," and "represent[ed] that American does not sell customer information or share a customer's email address with third parties unless required by law, and does not disclose customer information to companies affiliated with American, or unaffiliated third parties, except to fulfill products or services the customer requests, and may disclose this information to the United States or other countries' tax, security, or regulatory authorities, if required by law.

(*Id.*)

19      American argued that the breach-of-contract claim was preempted because it could
20 not be adjudicated without resort to outside sources of law – specifically the court would
21 need to consider whether dissemination of the confidential information was "required by
22 law." (*Id.* at 565.) In rejecting this argument, the court stated that "American agreed to be
23 bound by its privacy policy, except as required by law," and that "the laws that American
24 maintains are external to the contract are expressly incorporated into it." (*Id.* at 566.) The
25 court added that the plaintiffs did "not seek to modify the contract to press a right that is
26 external to its terms." (*Id.*)
27      *American Airlines, Inc. Privacy Litigation* is inapposite here because, unlike here,
28 the airline had made a "self-imposed obligation," namely, to protect the privacy rights of

1   its passengers. American's argument that the court would need to consider "external laws"
2   to determine whether American violated that obligation did not change the fact that
3   American had made such a contractual commitment in the first place. By contrast, here
4   McMullen has not - and cannot - point to any "self-imposed obligation" by Delta not to
5   collect the Tax from exempt passengers. Delta never agreed in its International Contact of
6   Carriage *not* to collect this or any other ticket tax from anyone. The only relevant
7   provision in the contract is Rule 90(c)(2)(b), which expressly recognizes that Delta agents
8   might in fact collect international ticket taxes in error from passengers who are in fact
9   exempt from those taxes. It also provides a contractual process by which affected
10  passengers may obtain a refund of the erroneously collected taxes. Thus, Delta did not
11  breach any provision of its International Contract of Carriage by collecting the Tax from
12  Plaintiff, even assuming the truth of his allegation that he is exempt from the Tax. Delta
13  would only have breached its contract with Plaintiff if had refused to issue Plaintiff a
14  refund of the erroneously collected Tax upon submission by Plaintiff of a valid request for
15  a refund which included proof of his alleged exempt status. This is a fundamental defect
16  in his theory of the case, which cannot be overcome.
17          Plaintiff fares no better with his reliance on *In re Air Transportation Excise Tax*
18  *Litigation*, 37 F. Supp. 2d 1133 (D. Minn. 1999.) There, as in this case, the airline
19  (Federal Express) breached no relevant contractual obligation. Shippers challenged
20  Federal Express's imposition of a federal excise tax that had expired. Although a valid,
21  express contract existed between the airline and the shippers, the court held that the
22  contract did "not oblige FedEx to reduce its rates to exclude the tax once it expired," or
23  "unambiguously . . . obligate FedEx to provide written notice to customers of a rate change
24  . . . ." (*Id.* at 1141-42.)
25          Finally, *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745 (Tex. 2003) also does not
26  support Plaintiff's argument against ADA preemption. In that case, a passenger whose
27  spouse was denied a first-class seat on an oversold flight to Las Vegas sued the airline for
28  breach of contract, fraud and misrepresentation, seeking to recover the cost of leasing a

private jet to fly the couple to their destination. The court held that the ADA preempted all of the claims. The court emphasized that it was "confined, in breach-of-contract actions, to the parties' bargain," and "[n]othing in the contract entitle[d] Black to the external remedy of reimbursement for the cost of a private chartered jet." (*Id.* at 755.)

In sum, none of the cases relied on by Plaintiff support his argument that the narrow *Wolens* exception to ADA preemption for enforcement of "self-imposed undertakings" by an airline applies to Plaintiff's challenge to Delta's collection of the Tax.

**B.    PLAINTIFF'S CHALLENGE TO THE COLLECTION OF THE MEXICAN NON-IMMIGRANT TAX IS "RELATED TO" DELTA'S PRICES, ROUTES AND SERVICE**

Plaintiff's argument that the connection between Delta's collection of the Tax and Delta's prices, routes and/or service is "too tenuous, remote, or peripheral" for ADA preemption of his claims fails as a matter of law. (Pl. Br. at 10.) As set forth in Delta's opening brief, Plaintiff's claims are preempted by the Airline Deregulation Act because they clearly are "*related to*" Delta's prices, given that the is collected as part of the purchase price of the passenger ticket and is related to and intertwined with the sale, price, and issuance of the passenger tickets. (Opening Br. at 4, 7-8.) In addition, Plaintiff's claims also are "*related to*" Delta's routes and services because the Tax is collected only on routes between Mexico and other countries and it is part of the services provides by Delta to its customers to facilitate the flow of passengers through Mexican airports by eliminating the need for passengers to stand in line at Mexican airports to pay the Tax prior to entering the country. (*Id.* at 4, 8.)

Plaintiff's unreasonably narrow construction of the ADA ignores the fact that the Supreme Court has read broadly the "related to" language in the ADA and, in turn, the preemptive effect of the ADA. (*See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of [relating to] is a broad one . . . and the words thus express a broad pre-emptive purpose").) In the recently-decided case *Rowe v. N.H. Motor Transp. Ass'n*, 522 U.S. ___, 128 S. Ct. 989 (2008), the Court defined the term "service" to

extend beyond prices, schedules, origins, and destinations. Indeed, in determining that the [ADA's] preemption provision reached, among other things, the imposition of recipient verification requirements on tobacco shipments, the Court stated expressly that "federal law must . . . preempt [state] efforts directly to regulate carrier *services*." (129 S. Ct. at 998) (Emphasis added).) The Court noted further that to interpret the federal preemption provision not to reach such regulation "could easily lead to a patch-work of state service-determining laws, rules, and regulations," which would be "inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." (*Id.* at 996; *see also id.* at 998 (Ginsburg, J., concurring) (noting the "breadth of [the] preemption language" in the Federal Aviation Administration Authorization Act of 1994, whose preemption provision (49 U.S.C. § 14501(c)(1)) is in *pari material* with that of the ADA).)

        Plaintiff also fails to rebut the fact that the U.S. District Court for the Central District of California recently found that "claims . . . concerning the collection of the Mexican tourism tax relate to Mexican's prices because the Mexican tourism tax is collected together with the purchase price of the passenger ticket and is related to and intertwined with the sale, price, and issuance of the passenger tickets." (*Sanchez v. Compania Mexicana de Aviacion S.A.*, Case No. CV 07-7196 (RCx) (C.D. Cal. March 23, 2008), at 5-7.)[3]

        Plaintiff's argument is also at odds with the holding in *Buck v. American Airlines, Inc.*, 476 F.3d 29 (1st Cir. 2007), where the court held that the ADA preempted claims to recover various fees and taxes – including passenger facility charges, customs fees, immigration fees, agricultural quarantine fees, security fees, and charges on behalf of foreign governments – collected as part of the original ticket price for unused, nonrefundable tickets. As the Court found there, "[a]lthough the fees are in one sense

---

[3]     *See* Exhibits 1 and 2 to the Declaration of Philip F. Atkins-Patterson In Support Of Delta Air Lines, Inc.'s Motion To Dismiss. (Dkt. # 10.)

W02-WEST:9RGG1\400959541.2         DELTA'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

1  separate from the base fare, the two are inextricably intertwined." (*Id.* at 35.) This is
2  because "when an airline establishes the base fare, it must take cognizance of any
3  surcharges that will be imposed by operation of law." (*Id.*; *see also Statland v. American
4  Airlines, Inc.*, 998 F.2d 539, 541-42 (7th Cir. 1993) (passenger's claim against American
5  for allegedly withholding the 10% federal excise tax on cancelled airline tickets likewise
6  preempted by the ADA); *Lehman v. USAir Group, Inc.* 930 F. Supp. 912, 915
7  (S.D.N.Y. 1996) (ADA preempted passenger claims that airlines improperly subjected
8  them to federal excise tax after tax had expired).)[4]

9        It is also clear that Delta's collection of the Mexican Non-Immigrant Tax relates to
10 Delta's "routes" and "services." Plaintiff alleges that the Mexican government imposes
11 the fees on passengers, but that the airlines (including Delta) assist in the collection of the
12 fee by charging the fee to passengers. (COMPLAINT ¶¶ 5-6.) If the airlines did not provide
13 this service, then passengers flying into Mexico would be treated like travelers to Mexico
14 by land, who pay "the non-immigrant fee at any bank upon arrival in Mexico . . . ." (*Id.*
15 ¶ 27.) This would add another delay to passengers who would have to pay the fee
16 separately, rather than the convenience of having the carriers charge the fee along with the
17 ticket price and other fees, taxes and surcharges. Thus, as the court found in *Sanchez* (at
18 p. 5), the challenge to collection of the Tax "also relate[s] to Mexicana's routes and
19 services because the Mexican tourism tax is collected only on routes between Mexico and
20 other countries and it is part of the services provided by [the airline] to its customers to
21 facilitate the flow of passengers through Mexican airports by eliminating the need for

---

[4] Plaintiff argues that *Statland* and similar cases do not apply because Plaintiff "is not contesting Delta's ticket refund policies, which do not apply to Plaintiff and the members of the Class." (Pl. Br. at 17, n.7.) However, Plaintiff clearly is challenging the fact that he paid the fee and has not received any refund. Moreover, this assertion is based on an unreasonably narrow interpretation of the holding of those cases. The bottom line is that Plaintiff is challenging payment of a tax which Delta included in the ticket price. It is difficult to imagine something less "related to" the "price" paid for air transportation.

passengers to stand in line at Mexican airports to pay the tourism tax prior to entering the country."

Significantly, none of the cases relied on by Plaintiff in his effort to avoid the broad ADA preemption involved anything resembling the factual situation here. Several cases did not even involve claims by airline passengers. For example, in *Aloha Airlines v. Mesa Air Group*, 2007 U.S. Dist. LEXIS 19484 (D. Hawaii March 19, 2007), Aloha alleged that a competitor, Mesa, violated federal antitrust law by misusing confidential information obtained when Mesa was considering an investment in Aloha. Aloha's claim was not materially connected to airline prices, routes or services because Aloha was "not challenging the prices [offered by Mesa], *per se*, but rather . . . the means by which Mesa was able to determine those prices, *i.e.*, through breaching its contract and implied covenant of good faith and fair dealing with Aloha." (*Id.* at *23.)

In *All World Professional Travel Services, Inc. v. American Airlines*, 282 F. Supp. 2d 1161 (C.D. Cal. 2003), a travel agency alleged that American Airlines violated the Racketeer Influenced and Corrupt Organizations Act, and was liable for breach of contract and various state laws, because of its conduct in requiring the agency to pay $100 or more for using the Airline Reporting Corporation to process passenger refunds for flights cancelled as a result of the September 11th attacks. The court found that none of the "state law claims relate to American's prices." (*Id.* at 1171.) Rather, the "only aspect of American's business undertakings that [was] address[ed] by [the travel agency's] claims [was] American's alleged scheme to recoup its refund losses in part by charging [the travel agency]" the penalties. (*Id.*) Significantly, the court did not take issue with the litany of cases holding that "an airline's ticket refund or ticket reissuance policy directly impacts prices." (*Id.* at 1170-71; *see also Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 195 (3d Cir. 1998) (travel agency's claim for defamation against airline which purportedly had suggested that the agency sold stolen tickets not preempted by the ADA); *Continental Airlines, Inc. v. Weiner*, 1999 U.S. Dist. LEXIS 16377, at *16-17 (C.D. Cal. March 29, 1999) (airline's claim against travel agency for unauthorized sale of discount

airline tickets not preempted because "claims do not require [the] Court to make a determination as to the validity of [airline's] discount program or revenues received thereunder").)

Plaintiff's reliance on *Godner-Abravenel v. American Airlines*, 1997 U.S. Dist. LEXIS 19833 (N.D. Cal. October 27, 1997), similarly is misplaced because the dispute there had nothing to do with taxes, fees or other charges. The plaintiffs alleged that a flight attendant negligently spilled hot water on an infant passenger during the flight. The finding of no ADA preemption was entirely consistent with Ninth Circuit precedent that "Congress did not intend to preempt passengers' run-of-the-mill personal injury claims." (*Charas v. Trans World Airlines*, 160 F.3d 1259, 1261 (9th Cir. 1998) (*en banc*).)[5]

Finally, to the extent that Plaintiff relies on language in *Air Transportation Excise Tax Litigation, supra*, that the ADA did not "preempt any of Plaintiffs' equitable and tort claims," 37 F. Supp. 2d at 1140, this language has been appropriately rejected as "mistaken." (*See Buck v. American Airlines, supra*, 476 F.3d 29, 36 n.8 (1st Cir. 2007) (referring to the *Air Transportation Excise Tax Litigation* as a "mistaken" decision).) And, in any event, the court in *Air Transportation Excise Tax Litigation* dismissed the claims for unjust enrichment and money had and received (and indeed all of the claims against FedEx) because "[e]quitable relief cannot be granted where the rights of the parties are governed by a valid contract," which existed between FedEx and the shippers. (37 F. Supp. 2d at 1143.)[6]

---

[5] In *Charas*, the Ninth Circuit construed the term "service" not to include "an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities." (*Id.* at 1261; *Cf. Air Transport Ass'n of America v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) ("*Charas*'s approach, we believe, is inconsistent with the Supreme Court's recent decision in *Rowe*," where "the Court necessarily defined 'service' to extent beyond prices, schedules, origins, and destinations").)

[6] *West v. Northwest Airlines, Inc.*, 955 F.2d 148 (9th Cir. 1993), is inapposite because the plaintiff there alleged he was improperly denied a seat on an overbooked flight. In holding that the claim for compensatory damages was not preempted, the court emphasized that FAA regulations "expressly contemplate[] that an injured passenger may seek relief in court for being bumped from an overbooked flight." (*Id.* at 152 (citing 14 C.F.R. § 250.9(b)).)

In sum, Plaintiff has failed to provide any plausible argument for why his challenge to Delta's collection of the Tax as part of the purchase price of his ticket is not sufficiently *"related to"* Delta's prices, routes or service to avoid preemption of his claims under the ADA.

### C. PLAINTIFF WAIVED HIS RIGHT TO SEEK A REFUND OF THE NON-IMMIGRANT TAX BY NOT PURSUING THE REFUND WITHIN THE ONE-YEAR CONTRACTUAL PERIOD

In its opening brief, Delta demonstrated that Plaintiff's breach of contract claim failed to state a claim upon which relief can be granted because, *inter alia*, Plaintiff did not seek a refund of the Tax within the one-year period prescribed in Rules 90(C)(2)(b) and 65 of the Delta International Contract of Carriage. (Opening Br. at 13-14.) In response, Plaintiff does not deny that he failed to pursue a refund from Delta within one year of his dates of travel. Instead, he contends that the one-year period for seeking a refund of the Tax did not apply to him because "Rule 90 of the International Contract of Carriage – only applies to *unused* tickets." (Pl. Br. at 16) (emphasis in original). Plaintiff is wrong.

Plaintiff relies on the general language of Rule 90(A) of Delta's International Contract of Carriage, which provides that Delta will issue refunds on unused or partially used tickets pursuant to the provisions of this rule. (Pl. Br. at 16.) However, the operative provision is Rule 90(C)(2)(b). Rule 90(C) is entitled "Voluntary Refunds," which are defined to include "*any refund* made at the request of the passenger *for any reason* other than those specified in the preceding section . . . ." (Emphasis added.) By its terms, there is no requirement that the refund be sought only for an unused ticket. To the contrary, the specific language of Rule 90 (C)(2)(b), entitled "Refund of Taxes, Fees or Charges," expressly provides that "Delta *will* refund taxes, fees or charges collected upon nonrefundable tickets for international transportation . . . *where required by law or where such taxes were collected in error and the passenger submits evidence of exemption from the tax, fee or charge to Delta in connection with a timely refund request.*" (Emphasis added.) Nothing in this language specifies that it is limited to situations in which the

1  tickets were unused, and nothing in Rule 90 or elsewhere in Delta's International Contract
2  of Carriage states that Delta will *not* issue a refund of erroneously collected taxes (whether
3  or not the ticket is used), if the plaintiff submits a valid and timely request for a refund.[7]

## III.

## CONCLUSION AND REQUESTED RELIEF

For all of the reasons set forth above and in Delta's opening brief, Delta respectfully requests that this Court dismiss Plaintiff's COMPLAINT and action with prejudice.

Dated: July 29, 2008

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By  /s/ *Philip F. Atkins-Patteson*
PHILIP F. ATKINS-PATTENSON

Attorneys for Defendant
DELTA AIR LINES, INC.

---

[7] Plaintiff's assertion that Delta would have refused his refund request is both speculative and irrelevant. The undisputed fact is that he never asked for a refund during the one-year periods from his dates of travel.