IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SPENCER R. McMULLEN,

    Plaintiff,

v.

DELTA AIR LINES, INC.
and DOES 1-100,

    Defendants.

No. 08-1523 JSW

**ORDER GRANTING MOTION TO DISMISS**

Now before the Court is the motion to dismiss filed by defendant Delta Airlines, Inc. ("Delta"). Having considered the parties' papers, relevant legal authority, and good cause appearing, the Court hereby GRANTS Delta's motion to dismiss.

**BACKGROUND**

Plaintiff alleges that according to the Mexican General Law of Population, all persons who fly into Mexico from the United States are charged a Mexican Non-Immigrant Tax ("Tax"). (Compl. ¶¶ 5, 18.) Plaintiff also alleges that all citizens of Mexico, all persons who hold a valid Mexican FM2 or FM3 visa, infants under 2 years of age, transit passengers staying in Mexico less than 24 hours, and diplomats are exempt from the tax. (*Id.* ¶¶ 1, 5, 18.) Plaintiff claims that he was the holder of a valid Mexican FM3 visa when he flew on Delta from Los Angeles to Mexico on at least two occasions, but was nonetheless charged the Tax. (*Id.* ¶¶ 47-50.) Plaintiff alleges that Delta collects this Tax on behalf of the Mexican government on all passengers flying into Mexico from the United States, regardless of whether or not they are

exempt from the Tax.  (*Id.* ¶¶ 3, 6, 7, 9.)  Plaintiff further states that Delta never remitted the Tax collected from exempt passengers to the Mexican government, and instead kept the fees for itself.  (*Id.* ¶¶ 3, 8, 11, 12, 60, 61.)

Plaintiff claims Delta is bound by a valid written contract with its passengers ("International Contract of Carriage") which incorporates "applicable law," including the Mexican General Law of Population.  (*Id.* ¶¶ 68, 69.)  Plaintiff also contends that when Delta improperly collected the Tax from exempted passengers, which was not actually due to the Mexican government, it breached Delta's International Contract of Carriage.  (*Id.* ¶ 73.)  Further, Plaintiff asserts that Delta breached the implied covenant of good faith and fair dealing by failing to determine which taxes, fees, and surcharges were actually due for each passenger, charging exempt passengers the Tax, and retaining the Tax collected from exempt travelers for itself.  (*Id.* ¶ 81.)

Finally, Plaintiff alleges that he represents a class of all exempt passengers who were charged this Tax by Delta upon flying into Mexico via California.  (*Id.* ¶¶ 1, 56.)

## ANALYSIS

### A.   Legal standard on Motion to Dismiss.

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken as true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  The Court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

2

**B.    Plaintiff's Claims are Preempted by the Airline Deregulation Act.**

**1.    Plaintiff's Claims Relate to a Price, Route, or Service.**

The Airline Deregulation Act ("ADA"), provides that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).  Therefore, if a claim seeks enforcement of a state law that relates to the "price, route, or service of an air carrier," it is expressly preempted by the ADA. "[T]he key phrase, obviously, is 'relating to.'  The ordinary meaning of these words is a broad one -- 'to stand in some relation; to have bearing or concern; to pertain; to bring into association with or connection with,' -- and the words thus express a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)).  In *Morales*, the Supreme Court rejected a narrow reading of the statute that would only preempt States from actually prescribing rates, routes, or services because that would effectively "read the words 'relating to' out of the statute." *Id.* at 385.  However, the Court recognized that some actions may affect airline fares in "'too tenuous, remote, or peripheral a manner' to have preemptive effect." *Id.* at 390 (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 100 n.21 (1983)).  The Court held that because the obligations imposed on airlines by state advertising regulations had a "significant impact upon the airlines' ability to market their product, and hence a significant impact upon the fares they charge," the state regulations in *Morales* were preempted by the ADA. *Id.* at 390.

Plaintiff raises the issue that the Tax charged by Delta is too "tenuous, remote, or peripheral" to be considered part of the "price, route, or service of an air carrier." Plaintiff cites *Charas v. Trans World Airlines*, 160 F.3d 1259, 1261 (9th Cir. 1998), in which the Ninth Circuit held that "Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry."  In *Charas*, the court held that "an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities"

3

was not included under the term "service" and therefore plaintiffs' personal injury tort claims were not preempted by the ADA. *Id.* The court reasoned that interpreting "service" more broadly would effectively "result in the preemption of virtually everything an airline does." *Id.* at 1266. Similarly, Plaintiff in the present case contends that because enforcement of state law regarding the Tax is not related to the term "price," his claims fall outside of the ambit of the ADA. (Opp. Br. 10-13.) However, Plaintiff's contention is incorrect because even in *Charas*, the court in fact held that the rates that customers pay is related to price. *Charas*, 160 F.3d at 1265. "Airlines 'rates' and 'routes' generally refer to the point-to-point transport of passengers. 'Rates' indicates price; 'routes' refers to courses of travel." *Id.* Thus, the imposition of the Tax on customers flying to Mexico via California undoubtedly is related to the price of the ticket that customers will eventually pay, and affects the economic deregulation of the airlines and the forces of competition within the airline industry.

This is further supported by *Buck v. American Airlines, Inc.*, 476 F.3d 29, 35 (1st Cir. 2007). In that case, the court held that fees charged above the base ticket price still relate to the price of the ticket:

> Although the fees are in one sense separate from the base fare, the two are inextricably intertwined. In all events, an air traveler's concern is with the overall cost of his or her ticket. Thus, when an airline establishes the base fare, it must take cognizance of any surcharges that will be imposed by operation of law.

*Id.* In *Buck*, plaintiffs alleged that defendant airline unlawfully denied them a refund of certain fees and the court held that "it is freshman-year economics that higher prices mean lower demand, and that consumers are sensitive to the full price that they must pay, not just the portion of the price that will stay in the seller's coffers." *Id.* at 36. Further, the Tax is only imposed on those routes reaching Mexico and therefore Plaintiff's claims sufficiently relate to routes as well. Therefore, because Plaintiff's claims relate to the price, route, or service of Delta, his claims fall under the authority of the ADA and are preempted unless they fall under a valid exception.

4

### 2. Delta's Collection of the Tax is Not a Self-Imposed Undertaking.

Although *Morales* interpreted the ADA as broadly preempting state laws and lawsuits, the Supreme Court in a subsequent case carved out an exception from preemption where an airline violates "its own, self-imposed undertakings." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 227-28 (1995). In *Wolens*, plaintiffs complained that defendant American Airlines devalued their already-earned mileage credits by altering what kinds of benefits they could be exchanged for, and sought relief on a breach of contract theory. *Id.* at 224-25. In allowing plaintiff's breach of contract claims to go forward, the Supreme Court held that it did "not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 229. Instead, the ADA preempts state actions that "refer to binding standards of conduct that operate irrespective of any private agreement." *Id.* at 229 n.5. In sum, the "distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or polices external to the agreement." *Id.* at 233.

The kind of self-imposed undertaking that occurred in *Wolens* is not present in this case. Here, Plaintiff alleges that the following provisions of Delta's International Contract of Carriage impose an obligation on Delta not to collect the Tax from exempt passengers:

```
RULE 1 - GENERAL PROVISIONS
C.    Application of International Conditions of Carriage
      4.    Overriding Law
            These Conditions of Carriage are applicable except to the extent
            that they are contrary to applicable laws, governmental regulations,
            or orders, in which event the contrary law, regulation, or order shall
            prevail. If any provision of these Conditions of Carriage in invalid
            under any applicable law, the other provisions shall remain valid.

RULE 55 - LIABILITY OF CARRIERS
E.    Overriding Law - Insofar as any provision contained or referred to in the
      ticket or in this tariff may be contrary to a law, government regulation,
      order or requirement which severally cannot be waived by agreement of
      the parties, such provisions shall remain applicable and be considered as
```

5

> part of the contract of carriage to the extent only that such provision is not contrary thereto. The invalidity of any provision shall not affect any other part.

(*See* Declaration of Scott McClain, Exs. 1 and 2, at 2 and 33-34.) First, Plaintiff contends that pursuant to these provisions, Mexico's General Law of Population is incorporated into the International Contract of Carriage. Second, Plaintiff argues that Delta's collection of the Tax from all customers, exempt or not, is a self-imposed undertaking. Third, Plaintiff contends that Delta's collection of the Tax is made not pursuant to the General Law of Population. Finally, Plaintiff argues that because Delta's collection of the Tax is a self-imposed undertaking that is contrary to the General Law of Population, which has been incorporated into the International Contract of Carriage, it is a breach of contract that fits under the *Wolens* exception because it is a bargain which has no "enlargement or enhancement based on state laws or polices external to the agreement." *Wolens*, 513 U.S. at 233.

Plaintiff's arguments are fundamentally flawed. Plaintiff cites *In re American Airlines, Inc., Privacy Litigation*, 370 F. Supp. 2d 552, 566 (N.D. TX 2005), to support its argument that the General Law of Population is incorporated into the International Contract of Carriage, and therefore when Delta collected the Tax from exempt travelers, it breached the International Contract of Carriage. In *In re American Airlines*, the court held that where defendant undertook to protect the confidential information of plaintiffs except as required by law and breached that contract in direct violation of a federal statute, the federal statute was incorporated into the contract and thus there was no enlargement external to the terms of the parties' agreement. *Id.* Like the situation in *In re American Airlines*, Mexico's General Law of Population is only incorporated into the International Contract of Carriage to the extent that it is contrary to any terms in the International Contract of Carriage. However, the crucial distinction is that unlike in *In re American Airlines*, Plaintiff in this case has not pointed to any provision in the General Law of Population which prohibits Delta from collecting the Tax from exempt passengers. Therefore, *In re American Airlines* does not apply in this case because none of Delta's actions in collecting the Tax are contrary to any terms of the Mexican General Law of Population.

6

Next, Delta did not undertake to only charge non-exempt passengers, but merely promised to comply with applicable laws, regulations, and orders that are in conflict with the International Contract of Carriage. Plaintiff attempts to distinguish *Sanchez v. Mexicana Airlines*, CV 07-7196 (C.D. Cal, March 25, 2008). In *Sanchez*, the plaintiff alleged that vague, cursory language on Mexicana's website was a self-imposed undertaking to collect the Tax only from non-exempt passengers and the court held that "the language relied upon by plaintiff from Mexicana's website as the sole basis for imposing a duty on Mexicana does not create any contractual obligation on the part of Mexicana ... relating to the Mexican tourism tax." *Sanchez*, at *7. Plaintiff argues that unlike in *Sanchez*, there is an explicit International Contract of Carriage in this case, and so there was a self-imposed undertaking. However, this still does not change the fact that Delta never undertook to only charge non-exempt customers the Tax, and thus *Sanchez* is inapposite. Therefore, this Court finds that the *Wolens* exception does not apply to this case, and Plaintiff's breach of contract claims are preempted by the ADA.

### 3. Breach of the Implied Covenant of Good Faith is Preempted.

Plaintiff's claims for breach of contract are preempted by the ADA, and so too are his claims for breach of the implied covenant of good faith and fair dealing because both claims arise from Plaintiff's contention that Delta had an obligation not to charge exempt passengers the Tax. "[U]nder California law, all contracts have an implied covenant of good faith and fair dealing." *In re Vylene Enterprises, Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996) (citing *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960)). However, the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* Thus, to the extent a plaintiff seeks to impose limits "beyond those to which the parties actually agreed, the [implied covenant] claim is invalid. To the extent the implied covenant claim seeks simply to invoke terms to which the parties *did* agree, it is superfluous." *Id.* at 352 (emphasis in original); *see also Careau & Co. V. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (holding that if the allegations supporting a claim for breach of the implied covenant of good faith and fair dealing "do not go beyond the statement

7

of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."). Thus, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is also preempted by the ADA.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Delta's motion to dismiss. This Court finds Plaintiff's claims are preempted by the ADA. Therefore, Plaintiff fails to state a cause of action upon which relief can be granted. As such, the Court cannot determine the merits of Plaintiff's case and whether Plaintiff waived his right to seek a refund of the Tax by not pursuing the refund within the one-year contractual period.

**IT IS SO ORDERED.**

Dated: September 30, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

8